Felch, Appellant, v. Findlay College, Appellee.*

(No. 640—Decided June 28, 1963.)

*Messrs. Adams & Bechtel*, for appellant.
*Mr. Garver Oxley* and *Mr. James E. Mitchell*, for appellee.

Guernsey, J.  This is an appeal on questions of law and fact from a judgment of the Common Pleas Court for the defendant, Findlay College, a private nonprofit corporation.

Plaintiff, William E. Felch, alleges, among other things, that he was employed by the defendant as a member of its faculty on a continuing basis and that contrary to and without compliance with the provisions for dismissal contained in administrative memoranda purporting to require certain hearings the board of trustees of defendant on August 22, 1961, approved the action of its president on July 20, 1961, dismissing the plaintiff effective August 11, 1961.  Plaintiff prays that "defendant be enjoined from carrying into effect the dismissal of this plaintiff as a member of the faculty * * * and that the defendant may be ordered to continue plaintiff as such mem-

---

*Motion to certify record (38452) settled and dismissed by agreement of parties, January 29, 1964.

ber of the faculty of Findlay College, Findlay, Ohio, and that defendant be ordered to pay to this plaintiff the salary therefore agreed upon."

In essence and in legal effect plaintiff seeks by injunction the specific performance of an employment contract. There are no Ohio statutes which purport to entitle plaintiff to the relief prayed for, and plaintiff's rights must be determined by general equitable principles.

The first and primary issue before this court is as to the remedy which plaintiff seeks and to determine this issue we will assume, without deciding, that a binding contract has existed between the plaintiff and defendant purporting to give plaintiff continuing employment status with a covenant by the defendant that plaintiff should not be dismissed for cause without a hearing conducted at the place, time, and in the manner provided by such covenant, and we will further assume, without deciding, that the defendant has breached this contract of employment by dismissing plaintiff without compliance with the hearing provisions of said covenant.

In *Masetta* v. *National Bronze & Aluminum Foundry Co.*, 159 Ohio St., 306, the Supreme Court held that "a court of equity will not, by means of mandatory injunction, decree specific performance of a labor contract existing between an employer and its employees so as to require the employer to continue any such employee in its service or to rehire such employee if discharged," and in Judge Middleton's opinion, unanimously concurred in, it was stated, at page 311:

"It has long been settled law that a court of equity will not decree specific performance of a contract for personal services. This court has recognized this principle of law whenever occasion arose. See *Port Clinton Rd. Co.* v. *Cleveland & Toledo Rd. Co.*, 13 Ohio St., 544; *New York Central Rd. Co.* v. *City of Bucyrus*, 126 Ohio St., 558, 186 N. E., 450; *Hoffman Candy & Ice Cream Co.* v. *Department of Liquor Control*, 154 Ohio St., 357, 96 N. E. (2d), 203."

In 81 Corpus Juris Secundum, 591, Specific Performance, Section 82, the rule is stated as follows:

"In general, specific performance does not lie to enforce a provision in a contract for the performance of personal serv-

ices requiring special knowledge, ability, experience, or the exercise of judgment, skill, taste, discretion, labor, tact, energy, or integrity, *particularly where the performance of such services would be continuous over a long period of time.* This rule is based on the fact that mischief likely to result from an enforced continuance of the relationship incident to the service after it has become personally obnoxious to one of the parties is so great that the interests of society require that the remedy be denied, and on the fact that the enforcement of a decree requiring the performance of such a contract would impose too great a burden on the courts. * * *

"On the other hand, where services have an unique and peculiar value, specific performance has been awarded under some circumstances. * * *" (Emphasis added.)

Assuming plaintiff's claim of continuing contract status, the services to be performed would "be continuous over a long period of time" and although his services might once have had a unique and peculiar value they no longer have any value as far as the defendant is concerned. Moreover, the rule of uniqueness is applicable to an action to require specific performance of a contract by an employee who refuses to perform personal services and not applicable to an action to require specific performance by the employer.

The same rule is reiterated in 2 Restatement of the Law of Contracts, 703, Section 379, and it is stated therein in comment:

"c. Among the many varieties of personal service contracts to which the rule of the Section applies are those requiring performance as * * * a teacher * * *.

"d. The refusal of affirmative specific enforcement in these cases is based * * * in part upon the undesirability of compelling the continuance of personal association *after disputes have arisen and confidence and loyalty are gone.* * * *" (Emphasis added.)

However, it is claimed by the plaintiff and the *amicus curiae* herein that the provisions of the plaintiff's contract require a hearing before dismissal and that the same constitutes a negative covenant, *i. e.,* that the defendant has agreed not to dismiss the plaintiff without following such dismissal procedure. It is recognized under the law of injunctions and specific per-

formance that notwithstanding that a personal service contract may not ordinarily be ordered specifically performed a negative covenant in such contract may, under some circumstances, be enforced by injunction. However, there are limitations on such enforcement. As stated in 2 Restatement of the Law of Contracts, 704, Section 380:

"(1) An injunction against the breach of a contractual duty that is negative in character may be granted either

"(a) to prevent harm for which money damages are not an adequate remedy caused by the breach of the negative promise itself, even though there are accompanying affirmative promises by either party that will not be specifically enforced, *unless such partial enforcement will lead to unjust or harmful results*; or

"(b) as an indirect mode of specifically enforcing an accompanying affirmative promise, if it is likely to be effective for that purpose *and if the affirmative promise is itself one that would be enforced by affirmative decree* except for the mere practical difficulties of such enforcement." (Emphasis added.)

Thus, even if the provisions for a hearing are, as claimed by plaintiff, a negative covenant, the enforcement of same would still lead to the same "unjust or harmful results" which constitute reasons for denying specific performance of the affirmative promise to employ plaintiff, and the enforcement of the negative covenant may not be used indirectly to specifically enforce the accompanying affirmative promise to employ for the reason that the affirmative promise is *not* "itself one that would be enforced by affirmative decree."

For these reasons it is the opinion and judgment of this court that the remedy of specific performance, either in itself or by means of the injunctive process, is not available to the plaintiff to enforce the provisions of the employment contract which he claims to exist between himself and defendant private college.

*Judgment affirmed.*

MIDDLETON, P. J., and YOUNGER, J., concur.