Lee A. BINGHAM and Christine Bingham, Husband and Wife, Appellants,

v.

MARSHALL & HUSCHART MACHINERY COMPANY, INC., Appellee.

No. 91–575.

Supreme Court of Iowa.

May 13, 1992.

Gregory T. Racette of Hopkins & Huebner, P.C., Des Moines, for appellants.

John Werner and Daniel J. Hanson of Grefe & Sidney, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and CARTER, NEUMAN, SNELL and ANDREASEN, JJ.

ANDREASEN, Justice.

A products liability suit was filed against an insolvent manufacturer and a seller of an allegedly defective machine. Prior to trial, the district court granted the seller's motion to dismiss the strict liability and implied warranty claims brought against it. The plaintiff's negligence claim proceeded

to a jury trial. The jury returned a verdict against the plaintiffs and in favor of the seller. Appeal was taken from the pretrial dismissal and from the judgment entered upon the verdict. Issues are also raised regarding evidentiary rulings made during the negligence trial as well as to instructions given to the jury. Finding no error, we affirm.

## I. *Background.*

In March of 1987, Lee Bingham severely injured his thumb while working with a straight-line table-feed drill at the John Deere Works (Deere) in Ankeny, Iowa. The drill was manufactured by Moline Tool Company (Moline). Deere purchased the drill from a distributor, Marshall & Huschart Machinery, Inc. (Huschart), in 1974.

As a result of his injuries, Bingham[1] filed suit against Moline and Huschart alleging strict liability, breach of implied warranty, and negligence. Moline is insolvent and has been so declared by the United States Bankruptcy Court for the Northern District of Illinois' Eastern Division.

Bingham filed a motion to have the trial court declare the manufacturer insolvent and to hold Huschart liable for his injuries under Iowa Code subsection 613.18(1) (1989). Huschart countered with a motion to dismiss all of Bingham's claims. After hearing, the district court denied Bingham's motion and granted Huschart's motion in part; dismissing the strict liability and breach of warranty claims under subsection 613.18(1)(a). The court, however, preserved the negligence claim for trial.

Bingham then applied to this court for permission to file an interlocutory appeal. We denied the request. The negligence claim proceeded to trial. Numerous objections were made to evidentiary rulings and to the instructions submitted to the jury. The jury returned a verdict in favor of Huschart on all counts. Bingham appeals.

## II. *Products Liability—Iowa Code Section 613.18.*

■ The term "product liability" relates to liability arising from injury or damage resulting from the use of a product. Product liability may involve causes of action stated in negligence, strict liability or breach of warranty. *See generally* 72 C.J.S. *Products Liability* §§ 2, 3 (Supp. 1975); 63 Am.Jur.2d *Products Liability* §§ 1, 5–7 (1984).

Strict liability in tort was first recognized by this court in *Hawkeye–Security Insurance v. Ford Motor Co.*, 174 N.W.2d 672, 684 (Iowa 1970). We adopted the principles of strict liability as found in Restatement (Second) of Torts section 402A. *Id.* Under these principles, a seller of a defective product may be held liable for harm to the ultimate user or to the user's property. Under comment (f) to section 402A, the term seller is defined as a person engaged in the business of selling products for use or consumption. The term seller included the manufacturer, wholesaler, dealer, distributor and retailer. *Id.* Strict liability was included in the definition of fault when, by statute, Iowa adopted comparative fault in 1984. 84 Iowa Acts, ch. 1293, § 1 (now codified at Iowa Code § 668.1).

With the adoption of 86 Iowa Acts chapter 1211, section 32, now codified at Iowa Code section 613.18, a statutory limitation was imposed upon strict liability and implied warranty claims against nonmanufacturers. The section provides:

1. A person who is not the assembler, designer, or manufacturer, and who wholesales, retails, distributes, or otherwise sells a product is:

a. Immune from any suit based upon strict liability in tort or breach of implied warranty of merchantability which arises solely from an alleged defect in the original design or manufacture of the product.

b. Not liable for damages based upon strict liability in tort or breach of implied warranty of merchantability for the product upon proof that the manufacturer is subject to the jurisdiction of the courts of

---

1. Bingham's wife, Christine, was also a named plaintiff in the suit. Christine's claims are for loss of consortium. We will refer to the Binghams in the singular.

this state and has not been judicially declared insolvent.

2. A person who is a retailer of a product and who assembles a product, such assembly having no causal relationship to the injury from which the claim arises, is not liable for damages based upon strict liability in tort or breach of implied warranty of merchantability which arises from an alleged defect in the original design or manufacture of the product upon proof that the manufacturer is subject to the jurisdiction of the courts of this state and has not been judicially declared insolvent.

■ In challenging the court's dismissal of the strict liability and implied warranty claims, Bingham argues that subsection 613.18(1)(a) does not give the seller a complete exemption from suit. Bingham asserts the general immunity is qualified or limited by the requirements of subsection 613.18(1)(b). He urges the intent of subsection 613.18(1) was to provide immunity to wholesalers, retailers, distributors and other sellers upon proof that the manufacturer was subject to the jurisdiction of Iowa courts and had not been declared judicially insolvent. We disagree with Bingham's construction of the statute.

In interpreting Iowa Code section 613.18, we keep our familiar rules of statutory construction in mind. *See, e.g., American Asbestos v. Eastern Iowa Community College*, 463 N.W.2d 56, 58 (Iowa 1990). The statute is divided into two subsections. Subsection 613.18(1) pertains to wholesalers, retailers, distributors and other sellers who are not the manufacturer or designer of the product and who do not assemble the product. Subsection 613.18(2) pertains to retailers who *do assemble* the products they sell.

Subsection 613.18(1) is itself divided into two paragraphs. Paragraph 613.18(1)(a) provides for immunity from suit when the potential claim arises solely from defects in the original design or manufacture of the product. Paragraph 613.18(1)(b) limits strict liability and implied warranty claims when the claims do not arise solely from an alleged defect in the original design or manufacture of the product. Examples of suits arising under paragraph 613.18(1)(b) include suits under strict liability for failure to warn about the dangers of a product. *See, e.g., Cooley v. Quick Supply Co.*, 221 N.W.2d 763, 768–69 (Iowa 1974) (citing Restatement § 402A); *LaCoste v. Ford Motor Co.*, 322 N.W.2d 898, 900 (Iowa App.1982); *Prosser & Keeton on Torts* § 99, at 695 (5th ed. 1984); 63 Am. Jur.2d *Products Liability* § 545 (1984).

There is no dispute that Huschart, the distributor, sold, but did not assemble, the drill. Thus, subsection 613.18(2) is inapplicable. It is also clear that Bingham's claim is one that arises solely from an alleged defect in the original design or manufacture of the product. Thus, subsection 613.18(1)(a) is applicable and provides Huschart with a statutory immunity from suit. Subsection 613.18(1)(b) does not impose a limitation upon the immunity protection of subsection 613.18(1)(a); it provides alternate protection against strict liability and breach of implied warranty for suits against non-manufacturers where the defect was not in the original design or manufacture. Subsection 613.18(1)(a) provides a "person ... is *immune* from any suit based upon...." Subsections 613.18(1)(b) and (2) provide a "person ... is *not liable for damages* based upon ... upon proof that...." Although the statute is not a model of clarity, we believe the immunity protection of 613.18(1) is not dependent upon proof that the manufacturer of the product is subject to the jurisdiction of the courts of this state and has not been declared judicially insolvent as required in subsections 613.18(1)(b) and (2).

The district court was correct in granting Huschart's motion to dismiss Bingham's strict liability and implied warranty claims.

### III. *Evidentiary Rulings.*

■ A trial court is granted a broad range of discretion in determining the admissibility of evidence and in giving instructions to the jury. We therefore review to determine whether the court abused its broad range of discretion. *See,*

*e.g., State v. Harmon,* 238 N.W.2d 139, 145 (Iowa 1979).

### A. Evidence of Subsequent Remedial Measures.

 Bingham claims that Huschart was negligent in failing to give proper safety instructions and warnings to Deere, the purchaser of the drill. Bingham offered evidence that Deere had changed the control mechanisms on the drill after he suffered his injuries.

Huschart objected to the evidence of Deere's subsequent remedial measures to the drill; citing both Iowa Rules of Evidence 407 and 403. However, it was eventually conceded that rule 407 did not prohibit the introduction of such evidence because the subsequent remedial measure had been taken by one other than the defendant. The court excluded the evidence based upon rule 403. Rule 403 permits the exclusion of relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury.

We, like the federal courts and the trial court, believe that rule 407 does not prohibit the introduction of evidence of subsequent remedial measures if they are undertaken by a third party nondefendant. *See Raymond v. Raymond Corp.,* 938 F.2d 1518, 1524 (1st Cir.1991) ("Rule 407 applies only to subsequent remedial measures taken voluntarily *by the defendant.*") (emphasis supplied) (citing cases). *See also,* E. Cleary *McCormick on Evidence* § 275, at 816 (3d ed. 1984); Annotation, *Admissibility of Evidence of Subsequent Remedial Measures Under Rule 407 of the Federal Rules of Evidence,* 50 A.L.R.Fed. 935 § 3, at 937 (1980 & 1991 Supp.); Annotation, *Admissibility of Evidence of Subsequent Repairs or Other Remedial Measures in Products Liability Cases,* 74 A.L.R.3d 1001 § 4[b], at 1016 (1976 & Supp.). Even though such evidence may not be prohibited by rule 407, it still may be excludable on other grounds, including rule 403.

Many federal courts have excluded evidence of subsequent remedial measures on the basis of rule 403 when rule 407 has been held inapplicable. *See, e.g., Raymond,* 938 F.2d at 1524 and cited cases. *See also Petree v. Victor Fluid Power,* 887 F.2d 34, 39 (3d Cir.1989). We agree with the reasoning of the 1st Circuit in *Raymond:*

> This does not necessarily mean, however, that the evidence must be admitted. As discussed *supra,* evidence may be excluded under Fed.R.Evid. 403 if its probative value is outweighed by the unfair prejudice that could result. Rule 403 may be used to exclude evidence of subsequent third party actions which are felt to bear only marginally on the question of whether a product was unreasonably dangerous at the time of manufacture. *Grenada Steel [Industries, Inc. v. Alabama Oxygen Co., Inc.]* 695 F.2d [883] at 889 [(5th Cir.1983)] (Evidence of subsequent nonparty repairs was properly excluded under 403 because it "lacked probative value and injected the dangers of confusion and misleading the jury."); *Gauthier v. AMF, Inc.,* 805 F.2d 337, 338 (9th Cir.1986) (Evidence of nonparty manufacturer's subsequent design changes should have been excluded under 403 as irrelevant.); *Koonce [v. Quaker Safety Products & Manufacturing Co.]* 798 F.2d [700] at 720 [(5th Cir.1986)] (Memo written by nonparty to suit regarding safety measures taken in response to accident could properly have been excluded as prejudicial or misleading.).

*Id.* at 1524–25.

Evidence of Deere's modification of the drill by installing two hand button controls has little relevance to Bingham's negligence claim based upon failure to give proper instructions and warning. It would have greater relevance in proof of a strict liability claim, a claim properly dismissed by the court. We believe that the trial court was well within its discretion to exclude the evidence of the subsequent remedial measure taken by Deere based on rule 403.

### B. Other Evidentiary Rulings.

We have reviewed Bingham's other evidentiary challenges and find them without

merit. The court did not abuse its discretion in initially excluding testimony made by Deere's safety director who was a production supervisor at the time the drill was purchased. The original proffered testimony related to what action Deere would have taken had the warning been given at the time of purchase. The witness was later allowed to testify as to what actions he would have taken as safety director had a warning been given to Deere prior to Bingham's injury. Thus, substantially the same evidence was later in the record without objection.

 The exclusion or admission of certain expert testimony, based upon the court's determination of the qualification of the witness, was well within its discretion. The court can properly consider the experience and familiarity with the subject, or the lack thereof, in assessing the witness' qualifications.

The exclusion of evidence relating to Bingham's loss of earning capacity is not reversible error. No prejudice can be shown. Even if the court improperly excluded evidence offered to prove damages, it is not reversible error where the jury finds in favor of the defendant on the issue of liability. *Shawhan v. Polk County*, 420 N.W.2d 808, 811 (Iowa 1988).

We have followed well-established standards in our review of the propriety of the submission of instructions to the jury. *See Young v. Gregg*, 480 N.W.2d 75, 80 (Iowa 1992). We find no prejudicial error in the instructions actually given or in the court's refusal to give Bingham's requested instructions. The instructions given thoroughly and fully presented the issues to the jury so that it had a proper understanding of the law to be applied in reaching a verdict.

### IV. *Conclusion.*

We affirm the district court judgment. We were required to expend additional time and energy in addressing the issues in this appeal because appellant's counsel is unfamiliar with the Iowa Rules of Appellate Procedure. We urge appellant's counsel to carefully review and comply with our rules in the future; specifically rule 14(a)(5).

AFFIRMED.